UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ALICIA PULIDO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:24-cv-210-AZ |
| | ) |
| FRANK BISIGNANO, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the Court on Plaintiff Alicia Pulido's appeal of the Commissioner of the Social Security Administration's (the "Commissioner") denial of disability benefits.[1] Pulido argues that the Administrative Law Judge ("ALJ") committed multiple errors in evaluating her application. For the reasons discussed, the Court disagrees with all of Pulido's arguments and finds no reversible error by the ALJ. Accordingly, the Court will affirm the ALJ's written decision.

## Background

Plaintiff Alicia Pulido filed an application for Social Security Disability Insurance and Supplemental Security Income benefits on September 7, 2021. A.R. 22.[2] She was 42 years old when she applied for disability. A.R. 34. She previously

---

[1] On August 29, 2024, the parties consented to the jurisdiction of the assigned Magistrate Judge for all purposes pursuant to 28 U.S.C. 636(c). *See* DE 12.

[2] Citations to the Administrative Record, filed at DE 8, are throughout as "A.R."

worked as a bank teller and a beauty consultant/make-up counter salesperson at a Walgreens store. *Id.*

In her application for benefits, Pulido alleged she was disabled (and has separately sought worker's compensation) based on musculoskeletal issues (neck, back and knee) stemming from a fall at work in January 2018. A.R. 26 ("The claimant testified that she had a workplace incident in January 2018 which caused left knee injury, neck and back. She said she had no lower back pain prior to the accident…"). She claimed a disability onset date of January 15, 2019. *Id.* at 22. Her claims were denied in the initial application and upon reconsideration, and Pulido requested a hearing before an ALJ. *Id.* On August 30, 2023, the ALJ held a telephonic hearing at which Pulido was represented by an attorney and a Vocational Expert (V.E.) testified. *Id.* At that hearing, Pulido amended her alleged onset date to October 21, 2019, the date of her lumbar fusion surgery. *Id.* at 24.

On November 20, 2023, the ALJ issued a written opinion denying benefits. A.R. 22-36. Plaintiff timely appealed to the Appeals Counsel and on April 16, 2024, the Appeals Counsel denied Plaintiff's Request for Review. A.R. 6. Plaintiff timely filed her complaint for District Court review. *See* DE 1.

Because the Appeals Council denied review, the ALJ's written decision is the final decision for review by the Court. *See* 20 C.F.R. §§ 404.981, 416.1481. In that written decision, the ALJ followed the standard five-step process to determine whether Pulido was disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one,

the ALJ determined that Pulido had not engaged in substantial gainful activity since her amended alleged onset date of October 21, 2019. A.R. 24.

At step two, the ALJ found Plaintiff had the following severe impairments: obesity, left knee meniscus tear, degenerative disc disease of the cervical and lumbar spine, migraines, partial thickness tear of the left shoulder rotator cuff, and left knee osteoarthritis. A.R. 24.[3]

The ALJ next considered whether Pulido's documented severe impairments met or equaled any of the applicable listings. In her pre-hearing memorandum to the ALJ, Pulido stated she was not "making a specific listing argument" but that "all applicable listings should be considered." A.R. 307. And no listing arguments were made during the hearing. *See generally* A.R. 41-84. In the written decision, the ALJ considered and addressed Listing 1.15 (Disorders of the skeletal spine resulting in compromise of nerve roots); Listing 1.16 (Lumbar spinal stenosis resulting in compromise of the cauda equina); Listing 1.17 (Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint); and Listing 1.18 (Abnormality of a major joint(s) in any extremity). The ALJ found that Plaintiff's impairments or the combination of them did not meet or equal any applicable listing because she did not have a documented medical need that satisfied all of requirements of any of these spine or joint-related listings. A.R. 25-26. Lastly, the ALJ considered Pulido's

---

[3] Pulido has not taken issue with the ALJ's findings as to her myriad neck, back and knee impairments (which were the focus of her hearing testimony and lawyer's arguments), but focuses on the two other impairments on the list: migraines and obesity.

3

documented obesity and whether the functional limitations imposed by her obesity met or medically equaled any listing. The ALJ determined that it did not. *Id.* at 26.

Having found Plaintiff was not presumptively disabled based on any applicable listing, the ALJ moved on to assess Pulido's Residual Functional Capacity (RFC). The ALJ found she had the capacity:

> to perform light work as defined in 20 CFR 404.1567(a) except she cannot climb ladders, ropes, or scaffolds; can frequently balance; can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; cannot be exposed to hazards such as unprotected heights, moving machinery, or slick, wet surfaces; and can frequently use her left upper extremity to handle, finger, and feel.

A.R. 26.

The ALJ then recounted the testimony and evidence from Plaintiff's medical history that supported or factored into the RFC. The ALJ noted that before the allegedly disability-inducing workplace accident in January 2018, Plaintiff had "a long history of musculoskeletal complaints" predating that time and that she had "was able to earn substantial gainful activity" throughout that time. A.R. 27. The ALJ furthermore charted Pulido's BMI from September 2019 through July 2023, showing fluctuations between 41.19 and 50.26. A.R. at 28. Then the ALJ chronicled multiple medical appointments post-dating January 2018 where Plaintiff reported minimal pain, improving symptoms, and doctor's notes about her normal ambulatory abilities. A.R. 29-33. As the ALJ summarized the record, "[m]ost of the imaging showed normal or mild musculoskeletal issues and objective examinations showed abilities that did not comport to her statements of pain." *Id.* at 33. The ALJ further noted multiple instances where Plaintiff did not follow up on suggested treatment without

4

explanation. *Id.* ("The provider she was seeing though a Functional Capacity Evaluation may help; she needed to talk to her attorney about the proposed treatment. She never returned for the evaluation."). Concerning medical opinion evidence, the State Agency consultants found there was insufficient evidence to opine on Pulido's limitations at the initial level. A.R. 91. But given there was additional evidence submitted after the initial level, the ALJ found the State Agency opinions to be inconsistent with the record as a whole and not persuasive. A.R. 34. The ALJ did find the medical evaluation and opinion of Dr. Mark Levine—who personally examined Plaintiff in August 2018 and found "no further left knee, cervical spine, or left shoulder orthopedic interventions justified by her history, physical exam, radiographs, and medical records"—to be persuasive "through the time it was rendered" because Plaintiff's claim that her disability stemmed from her January 2018 workplace accident. *Id.*

At step four, the ALJ found Plaintiff could perform her past relevant work experience as a bank teller and salesclerk "as generally performed per the [Dictionary of Occupational Titles]." A.R. 34. The ALJ further found that there were additional jobs in the national economy including cashier, foreign note cashier and cash clerk which Pulido could perform given her RFC. A.R. 35. Accordingly, Pulido was found to not be disabled.

## Discussion

The Social Security Act authorizes judicial review of a final decision of the agency and states that the Commissioner's factual findings must be accepted as

5

conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). A court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence, or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation omitted). "The threshold for this standard 'is not high.'" *Brace v. Saul*, 970 F.3d 818, 821 (7th Cir. 2020) (quoting *Biestek* 587 U.S. at 103). "Substantial evidence in this context means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting marks omitted).

Given this deferential level of review of agency decisions, the Court reviews the administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). Thus, the question is not whether the claimant is in fact disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)).

An ALJ must articulate their analysis of the evidence in such a way to allow the reviewing court to trace the path of their reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ "has a basic

6

obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2019) (citations omitted). But "[a]n ALJ need not specifically address every piece of evidence." *O'Connor-Spinner*, 627 F.3d at 618. Remand is appropriate only "when it is unclear if the ALJ examined the full range of medical evidence, or if the court cannot trace the ALJ's path of reasoning." *Wolford v. Kijakazi*, 658 F. Supp. 3d 664, 668 (N.D. Ind. 2023) (cleaned up).

Pulido raises three arguments on appeal, none of which primarily relate to the musculoskeletal issues in her neck, back or left knee which were highlighted at the administrative level. First, she argues that the ALJ committed reversible error for failing to consider whether Plaintiff's migraines met or equaled Listing 11.02 (Epilepsy). Second, she argues that even if her migraines did not medically equal the listing for epilepsy, the ALJ erred by finding her migraines to be a "severe impairment" at step two but then failing to incorporate any migraine-related limitations in the RFC. Finally, Plaintiff says the RFC was further flawed because it failed to adequately restrict her abilities on account of her obesity. The Court will address each argument in turn.

### A. Whether the ALJ needed to Evaluate Whether Plaintiff Met or Medically Equaled Listing 11.02.

Plaintiff's first argument is that because she was found to have suffered from migraines, the ALJ was required at step three to evaluate whether or not she met Listing 11.02, which is the listing for epilepsy (a condition which Plaintiff

7

undisputably does not have). Plaintiff's argument is unpersuasive. For one, in her pre-hearing brief and at the hearing, Plaintiff never raised the issue of Listing 11.02 or argued that she met the requirements of that listing or any other. *See* A.R. 307 (pre-hearing memorandum) and A.R. 41-84 (hearing transcript). "Although the Court recognizes that a strict waiver doctrine does not apply in Social Security disability cases, it is still worth noting that plaintiff's counsel at the administrative level glossed over the very issues her current counsel is faulting the ALJ for glossing over." *Barbara B. v. Saul*, 2020 WL 70922, at *4 (N.D. Ill. Jan. 7, 2020). Second, while Plaintiff is correct that the ALJ found her migraines constituted a "severe impairment" and that the ALJ did not discuss Listing 11.02 in the written decision, that was not an error.

Plaintiff relies on *Beerman v. Comm'r of Soc. Sec.*, 2018 WL 1187804, at *7 (S.D. Ohio Mar. 7, 2018) to argue that whenever a claimant has migraines, an ALJ must consider whether they meet Listing 11.02 for epilepsy. *See* DE 13 at 12. That is not a correct statement of law in this circuit or a correct characterization of the case. While *Beerman* correctly states that "[m]igraines or severe headaches are not a listed impairment" and that other courts have found the listing for epilepsy to be "analogous," *see Shepard v. Comm'r of Soc. Sec.,* 2015 WL 4554290, at *4 (S.D. Ohio Mar. 24, 2015), Plaintiff stretches that basic proposition beyond recognition by arguing a complete evaluation of the epilepsy listing is required anytime a claimant is found to have migraines.

8

Seventh Circuit precedent, which unlike opinions from out-of-circuit district courts is binding on this Court, "does not require ALJs to name and discuss every Listing in their written decisions." *Wilder v. Kijakazi*, 22 F.4th 644, 652 (7th Cir. 2022). "Such a requirement would be particularly unreasonable where, as here, the claimant does not identify a Listing at the hearing, and her attorney even conceded that she does not meet or equal a Listing." *Id.* Here, Plaintiff did not identify the epilepsy listing at her hearing and offers no evidence or argument about how she could plausibly meet it. And the Court's review of the record shows the same. "It is worth reiterating that a claimant bears the burden of proof at step three." *Id.* at 653. "[N]either the SSA's regulations nor the Social Security Act impose an affirmative obligation on ALJs to scour the Listings for a possible match, no matter how unlikely." *Id.* If a claimant fails to offer evidence that they meet or equal a listing (as Plaintiff fails to here), the ALJ "has no duty to analyze" that listing. *Eskew v. Astrue*, 462 F. App'x 613, 616 (7th Cir. 2011). In other words, *Wilder* and other binding precedent foreclose Plaintiff's epilepsy listing argument.

B.     **Whether the ALJ Failed to Adequately Incorporate Migraine-Related Limitations to the RFC.**

Plaintiff's second argument also concerns her migraines. She argues that the ALJ did not account for any limitations based on her migraines in formulating the RFC. And again, Plaintiff bases her argument almost entirely on the fact that the ALJ found migraines to be a "severe impairment" but did not discuss them further. *See* DE 13 at 9 ("the ALJ did not provide for any limitations relate to the Plaintiff's severe migraine headaches, nor did the ALJ explain why no such limitations are

9

included."). But like with Plaintiff's Listing argument, this argument also lacks merit and is unsupported by citation to any record evidence of any migraines-based limitations.

Plaintiff cites to two pieces of evidence in support of her migraines and their supposed limitations, both of which are self-reported. First, she points to an April 2018 medical appointment she had for "abnormal bleeding" where she reported as part of her review of symptoms "frequent or severe headaches, tension headaches from pain in neck." A.R. 649-651. Second, she cites a "Headache Questionnaire" she filled out as part of her benefits claim in 2022 where she reported that she has weekly headaches for which she has not seen a medical provider and treats with over-the-counter medications. *See* A.R. 247-249. And while the Court has not scoured the record for all other mentions of headaches or migraines, Plaintiff has never been medically treated for them and no doctor has ever opined that her abilities are limited by her headaches. And as the Commissioner convincingly notes, "four doctors opined about her abilities and not a single one advocated for any migraine-related limitations." DE 19 at 7 (citing A.R. 91, 98-99, 679-684, and 709-715). In other words, Plaintiff cannot point to anything that the ALJ failed to account for, and her argument is thus speculative and without merit.

"It is not enough to criticize the ALJ's decision about her functional capacity to work." *Morales v. O'Malley*, 103 F.4th 469, 470 (7th Cir. 2024). Instead, a claimant "must point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record." *Id.* "There is no error when there is 'no

10

doctor's opinion contained in the record [that] indicated greater limitations than those found by the ALJ.'" *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)). Here there is no medical opinion evidence related to any limitations from migraines so there would have been little-to-no basis for the ALJ to impose migraine-related restrictions.

Nor was the ALJ required to accept Plaintiff's subjective allegations concerning her migraines without qualification. Indeed, the ALJ made a finding and discounted Plaintiff's subjective claims generally because "the objective evidence and [Plaintiff's] own statements conflict." A.R. 33. And while that finding related to Plaintiff's neck, back and knee pain, that is because those were the symptoms that Plaintiff and her attorney argued for at the hearing. Plaintiff did not testify to any limitation because of her migraines. And her attorney did not argue for any. Thus, the ALJ made no finding specific as to the credibility of Plaintiff's migraines. As the Commissioner argues, this is something of a bait-and-switch by Plaintiff's counsel, arguing at the hearing in favor disability based on neck, back and knee pain and then bringing up an entirely different impairment (migraines) on appeal and faulting the ALJ for not addressing something Plaintiff herself chose not to address. *See Barbara B.*, 2020 WL 70922, at *4.

## C. Whether the ALJ Failed to Adequately Incorporate Obesity-Related Limitations in the RFC.

Plaintiff's third and final argument is that ALJ did not meaningful consider her obesity when formulating the RFC. Plaintiff concedes, as she must, that the ALJ discussed obesity as part of the RFC determination but argues that the ALJ only

11

considered obesity at a superficial level. She says "the ALJ's analysis of this severe impairment took place in a single sentence." DE 13 at 14. Plaintiff mischaracterizes the ALJ's written decision in this way and the record reflects the ALJ did what was required when assessing the impact of Plaintiff's obesity.

As part of building the "logical bridge" between the evidence and conclusions, ALJs must "consider the effects of obesity together with the underlying impairments." *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006). That is because of the possible exacerbation of impairments or symptoms because of obesity. *See Martinez v. Astrue*, 630 F.3d 693, 698-99 (7th Cir. 2011) ("It is one thing to have a bad knee; it is another thing to have a bad knee supporting a body mass index in excess of 40."). But an ALJ's decision-making is not a box-checking exercise and reversal is not required simply because an ALJ did not reference obesity a certain number of times in the written decision. *See Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015) ("[A]n ALJ's failure to explicitly consider an applicant's obesity is harmless if the applicant did not explain how her obesity hampers her ability to work.").

Here, the ALJ met that standard and contrary to Plaintiff's argument, referenced Plaintiff's obesity and considered its impact on her abilities at multiple instances. First, the ALJ noted obesity was a severe impairment. A.R. 24. Second, the ALJ discussed SSR 19-2p and obesity's impact on all other impairments when assessing whether Plaintiff met any applicable listing. A.R. 26. Then, when determining Plaintiff's RFC, the ALJ quoted extensively from SSR 19-2 (regarding evaluation of cases involving obesity) and charted Plaintiff's BMI at seven distinct

points in time (drawn from her medical appointment records) from September 2019 through July 2023. A.R. 27-28. In doing so, the ALJ specifically noted that obesity was a "contributing factor." *Id*. The ALJ likewise highlighted how Dr. Levine, who personally examined Plaintiff seventh months after her allegedly disabling fall, "noted that she was morbidly obese and walked with a reciprocal heel-to-toe gait" but that "she could toe-toe and heel-heel walk normally." A.R. 30. Physical therapy records from December 2018 stated that "she would have no problem with desk work, no problem sitting, no difficulty standing, [and] no problem walking over 1,000 yards without symptoms" which suggests minimal impact from obesity. *Id*.

Given this record, it is not true that the ALJ only address obesity "in a single sentence." *See* DE 13 at 14. Furthermore, Plaintiff's assertion that "one would therefore assume that the more weight and pressure Plaintiff is placing on her knees, the worse the pain," *id*. at 16, is nothing more than speculation on the part of her counsel. There is no citation to any medical evidence which would support greater limitations than those found by the ALJ and therefore no error.

## Conclusion

For the reasons discussed, the Commissioner's decision is AFFIRMED, and the Clerk of Court is DIRECTED to enter judgment for the Defendant Commissioner of Social Security.

SO ORDERED this 9th day of September 2025.

/s/ *Abizer Zanzi*
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

13